Mᴜɴɪᴄɪᴘᴀʟɪᴛɪᴇꜱ. *Laws* 1900, *ch.* 119, *p.* 155, *secs.* 6 *and* 7. *Public roads.*
Municipalities which work the streets "at the expense of the
municipal treasury," within the meaning of secs. 6 and 7, ch.
119, p. 155, Laws 1900, exempting such municipalities from the
statute—a scheme for working the public roads—are those
which work their streets with money collected by taxation, and
not those which work their streets with funds made up of com-
mutation taxes collected under an ordinance and fines imposed
on street delinquents and for obstructing streets.

Fʀᴏᴍ the circuit court of Pike county.
Hᴏɴ. Mᴏʏꜱᴇ H. Wɪʟᴋɪɴꜱᴏɴ, Judge.

The city of McComb City, the appellant, was the plaintiff, and Pike county, the appellee, defendant in the court below. From a judgment in defendant's favor the plaintiff appealed to the supreme court.   The facts are stated in the opinion of the court.

*Mixon & Butler,* for appellant.

*J. B. Sternberger,* for appellee.

Cox, J., delivered the opinion of the court.

The scheme provided by ch. 119, p. 153, Acts 1900, for the working of public roads by contract involves the requiring of eight days' special work service on the public roads, under the contractor, by all male persons over the age of eighteen and under the age of fifty years, with the exception of certain classes specified in the statute, or, in lieu thereof, the payment by each person liable for such labor of a commutation tax of $3, and an *ad valorem* tax on all taxable property in the county, to be collected and paid over to the county treasurer, to be kept as a separate road fund.   The statute provides that all the commutation tax shall be expended in the district or village, town or city, from which the same was collected, and such commutation tax for road purposes paid by the residents of a municipality shall be turned over to the treasurer of such municipality and be expended by the proper authorities thereof for that purpose, but the *ad valorem* tax shall be treated as a general road fund for use anywhere in the county, except the taxes so collected on property within the municipality, the streets of which are worked at the expense of the municipal treasury, which shall be equally divided between the county road fund and the municipal street fund.   Vide sec. 6, ch. 119, p. 154, Acts 1900.   Pike county having elected to work its roads under the provisions of the act of 1900, and an *ad valorem* tax on all the property of the county having been levied

and collected therefor, McComb City demanded that one-half of the tax collected within its municipal limits be returned to it, claiming that its streets were worked at the expense of the municipal treasury during the time for which the said *ad valorem* tax was collected. Its demand having been refused, suit was brought in the circuit court of Pike county for its enforcement. Judgment having been there rendered in favor of the county, the plaintiff prosecuted an appeal to this court.

Upon the trial it was agreed that during the years in question McComb City worked its streets under the charge of a street commissioner, who drew his compensation, by warrant, by order of the municipal board, out of the street fund, which was made up of a commutation tax collected under an ordinance of the city, of fines imposed on street delinquents and fines imposed for the obstruction of streets. A jury having been waived and the cause submitted to the decision of the court, judgment was rendered for defendant, evidently because, in the opinion of the trial judge, the streets of McComb City were not worked during the time in question at the expense of the municipal treasury. This judgment of the court is, of course, the sole error assigned on appeal.

It becomes necessary, in reviewing this judgment, to ascertain the legislative intent in providing for an equal division with the municipality of the *ad valorem* tax collected within its limits, where the streets of the municipality are worked at the expense of the municipal treasury, and to do this it is necessary to determine what is meant by the phrase, "at the expense of the municipal treasury." If sec. 6 stood alone, it would be difficult to determine with any certainty what the legislature meant by this expression, for the section provides for a commutation tax on persons liable therefor, within the municipality, to be turned over to the treasurer of the municipality, as well as an *ad valorem* tax on property; and, inasmuch as the commutation tax must be drawn out of the treasury, it would seem that the working of the streets with the proceeds of the commuta-

tion tax would be a working of the streets at the expense of
the municipal treasury. Indeed, broadly speaking, if the work
was paid by warrants on the treasury, it would seem to be a
working at the expense of the treasury, regardless of the source
from which the fund arose. And yet, if this construction be
adopted, the only class left to be opposed to or distinguished
from the municipalities working their streets at the expense of
the municipal treasury would be those which work them by the
uncommuted labor of their citizens liable to such service. But
as the law permits this labor to be commuted in money, and as
it is in fact nearly always so commuted, the distinction at-
tempted to be made would prove vain and futile in practice.
But even if there were a large class of municipalities which
worked their streets by the uncommuted labor of their citizens
liable to such service, we cannot see how any valid distinction
can be made between such a class and municipalities which
work their streets with commutation money. This commutation
money is in no proper sense a tax at all, but is, as its name
implies, merely the commuted labor of the citizens; and the
difference between the two does not seem broad enough to war-
rant the distinction made by the legislature. But if sec. 7 (p.
155) be considered in connection with sec. 6, the meaning of
the phrase under consideration becomes clearer. The latter
part of sec. 7 declares: "The provisions of this act relating to
commutation tax shall not apply to municipalities which work
the streets at the expense of the municipal treasury." It is
clear from this that under this act there is no commutation tax
to be collected by the county in case of a municipality that
works its streets at the expense of the municipal treasury. The
two things are by this section made mutually inconsistent, and
herein is to be found the basis or ground of classification. If a
municipality works its streets at the expense of its treasury,
there can be no commutation tax by the county under this act.
If the commutation tax is collected, and it therewith works its
streets, it does not work them at the expense of the treasury.

If, then, working the streets with the commutation tax is not working them at the expense of the treasury, there is nothing else which this can mean, except the working of the streets out of the general funds in the treasury or out of a special fund provided by an *ad valorem* tax on property.

We think the legislature meant to provide by sec. 6 for a division of the county *ad valorem* tax with a municipality which worked its streets with money collected by taxation, and with no other class. We therefore concur in the judgment of the learned trial judge that McComb City was not working its streets at the expense of the municipal treasury, within the meaning of the act, and was therefore not entitled to demand of the county one-half of the tax collected on property within its limits.

*Affirmed.*