## McComb City *v.* Pike County.

### [45 South., 871.]

Counties. *Road taxes. Laws* 1900, *ch.* 119, *p.* 153, *sec.* 6. *Adjustment between county and municipality.*

Laws 1900, ch. 119, p. 153, sec. 6, directing the levy of an *ad valorem* tax on all property in the county, to be paid into the county treasury and used for working roads anywhere in the county, but providing that such taxes collected on property in a municipality the streets of which are worked at "the expense of the municipal treasury," shall be equally divided between the county road and the municipal street funds gives a municipality which works its streets with money out of its treasury, no matter how raised, one-half the road fund collected by the county on property within its limits. *McComb City* v. *Pike County,* 86 Miss., 647, s.c. 38 South., 721, *overruled.*

From the circuit court of Pike county.

Hon. Moyse H. Wilkinson, Judge.

The city of McComb, appellant, was plaintiff and Pike county, appellee, defendant in the court below. From a judgment in defendant's favor plaintiff appealed to the supreme court.

The facts are stated in the opinion of the court.

*W. B. Mixon,* and *Alexander & Alexander,* for appellant.

In the case of *McComb City* v. *Pike County,* 86 Miss., 647; s.c., 38 South., 721, this court, as then constituted, held that Laws 1900, ch. 119, § 6 (p. 153), providing for the collection by the county of *ad valorem* taxes, for road purposes, on property within a municipality, in the county, whose streets were worked at the expense of the municipal treasury, did not authorize division of the tax with a municipality which levied no *ad valorem* street tax but whose street fund was made up

wholly of commutation taxes and fines for nonpayment of commutation taxes.

Since the above case arose and was decided adversely to McComb city, it has altered, by ordinance, its scheme for working its streets, and now requires its board of aldermen to levy each year an *ad valorem* tax for street purposes, not to exceed one mill on all the real and personal property in the city limits. The proceeds of this *ad valorem* tax must be paid into the municipal treasury to the credit of the street fund and used in the working and repairing of the streets. For the year 1906 the municipality levied an *ad valorem* tax on one-fourth of a mill on all real and personal property in the city limits, collected the same, and placed it in the city treasury to the credit of the street fund to be drawn out by warrants in the usual manner and as required by law. This *ad valorem* tax was in addition to the labor and commutation tax therefor; the latter being $4 on all male citizens between the ages of eighteen and fifty years except as to certain designated classes. It will be seen that the question presented by the declaration and demurrer thereto is, whether the words in the act of 1900, " which are worked at the expense of the municipal treasury," must be read and construed as if they read, " which are worked at the *sole* expense of the municipal treasury." Is a municipality cut off from the right to the division of the tax merely because it supplements its *ad valorem* tax by the labor of its citizens or by commutation taxes ?

If the question were *res nova* in this court, we think the court would not now reach the conclusion announced in *McComb City* v. *Pike County, supra.* It is true that the decision in that case may be claimed to be *res adjudicata,* and to put at rest the claim of the city for the year involved; but, since this court is now asked by the appellee to push the rule there announced to the point of denying a municipality a right to the division of the tax collected within its limits, merely because it supplements its own *ad valorem* tax and commutation tax, we ask the court

to reconsider carefully the case cited.   For if the division was wrong, or even doubtful, we assume that this court will at least not extend the rule any further.

It must be a very technical construction which will hold that money collected from an urban taxpayer as commutation tax, and which is paid into the municipal treasury, is not as much in the municipal treasury as a like amount of *ad valorem* tax collected for the purpose and from the same person.   The legislative scheme did not look to the name by which the fund should be called, but to the source from where it came.   What possible concern could it be to the county whether the money in the municipal treasury was called a tax or commuted labor?   Yet, much stress seems to be laid, in the opinion of the court, in *McComb City* v. *Pike County, supra,* as to whether commutation money is a tax.   The language of § 6 of the legislative act is not " the streets of which are worked at the expense of *ad valorem* taxes in the municipal treasury," but merely, " at the expense of the municipal treasury."   The money in a municipal treasury comes always from different sources, privileges, fines, sales of bonds, loans, rents, for example.   It is safe to say that no warrant is ever drawn or paid solely and exclusively out of *ad valorem* taxes.

The obvious purpose of the legislature, in passing the act in question, was that, in all cases where any municipality assumed the exclusive burden of working its own streets by money appropriated out of its own treasury, its taxpayers should not be subjected to an *ad valorem* tax all of which was to be used on the county roads.   It was recognized as an universal and immemorial custom for all municipalities which maintained streets to do so by the labor of its citizens or by their commuted labor, and it was also recognized as manifestly unjust and unequal that urban inhabitants should be required to work on county roads, and, at the same time, keep up the streets of their municipality.

The learned judge who wrote the opinion in *McComb City* v.

*Pike County, supra,* cites the latter clause of § 7 of the legislative act in question, which prohibits the county from levying a commutation tax within a municipality which works its own streets at the expense of its own treasury, as making clearer the conclusion reached by him. We are unable to grasp his reasoning. It seems to us to point exactly the other way. If the opinion in the case cited be correct, it would work out a strange and, we think, an unjust result. If for any reason a municipality found that its commutation taxes were enough, for any particular year, to keep its streets in good condition and should accordingly levy no *ad valorem* tax, the county would collect an *ad valorem* tax on property within the limits of the municipality, and expend all of it on the county roads; for no statute has ever given or attempted to give to the board of supervisors of a county the right to work, or to expend county funds upon, the streets of a municipality. Yet, this strange result followed the decision in *McComb City* v. *Pike County, supra.* McComb City paid a large *ad valorem* tax to the county, all of which went to work county roads, and not a dollar of the same could be lawfully expended within the municipality.

Under the decision of this court in *Blocker* v. *State,* 72 Miss., 720; s.c., 18 South., 388, we challenge the right of a county, which has no jurisdiction whatever over the streets of a municipality, to collect an *ad valorem* tax within the city, no part of which can be applied for the benefit of the city. We do not claim that property within a municipality is outside of the county or beyond the power of the county to tax. We do say, however, that burdens and benefits must go hand in hand; and McComb City must bear its share of the burdens of Pike county, but it cannot be required to pay a tax which is imposed with the requirement and condition that no part of it can be used for the benefit of the city. If it be true, as stated in *Blocker* v. *State, supra,* that the county cannot lawfully be required to work the streets of the city, and if it be true that the city cannot be required to keep up the roads of the county, then surely

the county cannot tax a city for the exclusive use of the rest of the county. The opinion in *McComb City* v. *Pike County, supra,* is inconsistent with the rule laid down in *Blocker* v. *State, supra.*

*R. V. Fletcher,* attorney-general, for appellee.

It will be noted that, when this suit was instituted, McComb City was operating under a special charter and not under the code chapter on municipalities; and that Pike county had adopted the contract system provided for in Laws 1900, ch. 119. After the decision of this court in *McComb City* v. *Pike County,* 86 Miss., 647; s.c., 38 South., 721, McComb City passed an ordinance empowering the city board to levy a special *ad valorem* tax, for street purposes, and pursuant thereto the board levied an *ad valorem* tax, for the year 1906, amounting to one-fourth mill. This suit is now brought by McComb City on the theory that by reason of the levy of this *ad valorem* tax the city is entitled to one-half of the amount of *ad valorem* tax collected by the county on property within the city limits for the year mentioned.

It is of course manifest that this case must be determined by the provisions of the act of 1900 and that no account is to be taken of the amendment made by Code 1906, § 4469, which inserts the words, " or worked by municipal authority." For the County of Pike, having adopted the road law as set forth in said act of 1900, is under the operation of the saving clause of Code 1906, § 4475, which provides that the code chapter No. 123 on " Roads, Ferries and Bridges," shall " not apply to any county already working the roads under any existing legal contract system, unless etc.

Upon the first and principal ground of demurrer the sole question is, whether, under the recent decision of *McComb City* v. *Pike County, supra,* it is sufficient for a city to supplement its road fund, derived very largely from commutation money and fines, with a very small *ad valorem* tax, and thereby secure

the right to demand this from the county. Learned counsel for the appellant perceive that if the case cited is sound in its reasoning this present appeal must be decided against appellant, and they therefore attempt to have the decision in that case overruled. The opinion of Cox, J., is however a well reasoned one, and I hardly feel called upon to defend it, inasmuch as it interprets the statute in the only way in which it can be interpreted to give effect to all parts of the statute and maintain a consistent scheme. It is clear that two classes of municipalities are treated: one that works its streets by commutation money, the other that works its streets by *ad valorem* taxation. For it is provided by ch. 119, § 7 of the legislative act, that no commutation tax shall be collected in those municipalities which work the streets at the expense of the municipal treasury. This must imply that where no commutation tax is collected by the city no commutation tax will be imposed by the county. If the city uses a commutation tax for the purpose of raising the necessary fund, then the county will turn over to the city all the commutation money and none of the *ad valorem*. If the city does not depend upon the commutation tax, but works the streets at the " expense of the municipal treasury," then there is no commutation tax to be levied by the county, and one-half of the *ad valorem* tax is to be paid to the municipality. This is the scheme adopted by the legislature as interpreted by this court in the decision in *McComb City* v. *Pike County, supra,* and is the only possible way to correctly construe the various provisions of the statute.

It is contended by learned counsel for appellant that, since the *ad valorem* tax is levied, the municipality becomes entitled to one-half of the *ad valorem* tax collected by the county on property situated in the city. But what is to become of the concluding sentence of § 7 of the act in question, providing that the provisions of the act relating to commutation tax shall not apply to municipalities which work the streets at the expense of the municipal treasury? If the construction con-

tended for by appellant is correct, we have the curious inconsistency of collecting the commutation tax in one section and refusing to collect it in the other.

The case of *Blocker* v. *State,* 72 Miss., 720; s.c., 18 South., 388, is relied on by appellant to support its contention as to the unsoundness of the decision of *McComb City* v. *Pike County, supra.* The *Blocker case* dealt, however, with a municipality operating under the code chapter on municipalities, while the case at bar is concerned with a municipality operating under its own special charter. It can hardly be successfully contended that it is beyond the power of the legislature to require municipalities to pay a general road tax if in the judgment of the legislature such a tax is needed. As well say that property in a town cannot be taxed to maintain public schools.

MAYES, J., delivered the opinion of the court.

This is a suit by McComb City against Pike county for the purpose of recovering $1,492. The facts shown by the declaration in the case are as follows: It is alleged that under the charter of McComb City it has the authority and is compelled to maintain and keep its streets in repair, and in order to do this the expense for same is paid out of the street fund of the municipal treasury. This fund is raised by requiring all male citizens over the age of eighteen years and under the age of fifty years, not exempt from the payment of tax by law, to pay to the chief of police each year the sum of four dollars street tax. This amount is paid into the city treasury and kept as a street fund to be used in working the streets. This fund is supplemented by an *ad valorem* tax for street purposes, not to exceed one mill on all property, real and personal, not exempt by law from taxation; and this fund is further supplemented by such fines and penalties as may be collected and imposed for the failure on the part of any person to pay the street tax above required. In 1906, the year for the taxes of which this suit is brought, the city levied and collected an *ad valorem* tax of one-

fourth of one mill on all the real and personal property in McComb City, and the money so collected was placed in the city treasury to the credit of the street fund, and out of this fund all work done on the streets was paid for by warrants, duly allowed by the board of mayor and aldermen, drawn on the treasury. The declaration further shows that Pike county, under ch. 119, p. 153, of Laws of 1900, elected to work the public roads by contract in accordance with the provisions of the chapter; that the board of supervisors proceeded to conform to the provisions of the act, and let out a contract for the working of the roads for the year 1906, and levied an *ad valorem* tax of two mills on all the property, real and personal, in the county of Pike for the purpose of raising funds to defray the expense incurred under their contract. The amount of *ad valorem* tax collected in McComb City for this purpose by the board of supervisors amounted to $2,984. The city of McComb claimed to be entitled to one-half of this amount under the provisions of the act of 1900, and made demand on the board of supervisors for the same, which the board refused to pay; hence this suit. A demurrer was interposed to the declaration, setting up two grounds of demurrer: First, that the city does not work its streets at the expense of the municipal treasury, within the meaning of ch. 119, Laws of 1900; and, second, that the city is not authorized or empowered by its charter to levy an *ad valorem* tax for street purposes. This demurrer was sustained, the suit dismissed, and the city appeals.

Section 6, ch. 119, p. 154, Laws of 1900, provides that there shall be required annually, in each county, eight days' special work on the public roads under the contractor; but any person in lieu of said special service may pay a commutation tax for road purposes of three dollars. In addition to the commutation tax, it is provided that there shall be an *ad valorem* tax on all taxable property in the county, not to exceed one mill on the dollar in any one year, all of which tax is to be collected as any other tax and paid over to the county treasurer, who shall keep

all such taxes as a road fund, to be used exclusively as such in compliance with the terms of the act, and paid out only upon the warrant of the board of supervisors; and it is further provided that "all the commutation tax shall be expended in the district or incorporated village, town or city from which the same was collected, and such commutation tax for road purposes paid by the residents of such municipality shall be turned over to the treasurer of such municipality and be expended by the proper authorities thereof for that purpose, but the *ad valorem* tax shall be treated as a general road fund for use anywhere in the county, except the taxes so collected upon property within a municipality, the streets of which are worked at the expense of the municipal treasury, which shall be equally divided between the county road fund and the municipal street fund." In the case of *McComb City* v. *Pike County,* 86 Miss., 647; 38 South., 721, it was held that a municipality which worked its streets with funds made up of a commutation tax and fines imposed on street delinquents for failure to pay this tax and for obstructing the street did not work its streets "at the expense of the municipal treasury," within the meaning of sections 6, 7, ch. 119, pp. 154, 155, Laws of 1900. We are very reluctant to disturb this decision of the court; but so strong is our conviction of the error in this decision that we feel that we cannot allow it to perpetuate the error. There is a slight distinction between the case under discussion and the case *supra*; but the difference is so slight that we do not feel that it can be distinguished in its facts from the case of *McComb City* v. *Pike County,* 86 Miss., 647; 38 South., 721.

It is our judgment that the legislature meant by the words "at the expense of the municipal treasury," that such municipalities as bear the burden of the work of the streets and their repair by revenue of their own without burden to the county should be entitled to one-half the *ad valorem* tax paid on property within the municipality for road purposes. Where the city keeps up and works its streets by taxation, whether commutation

tax or *ad valorem* tax, it is our judgment that it falls within the
provision of the act in question, and that the streets are worked
" at the expense of the municipal treasury," within the meaning
of section 6 of the act of 1900. The legislature has clearly
shown its intention in Code 1906, § 4469, by adding, after the
words " worked at the expense of the municipal treasury," the
words " or worked by municipal authority." We feel bound to
overrule the case of *McComb City* v. *Pike County,* 86 Miss.,
647; 38 South., 721, and to hold that any municipality assuming
the burden of working its own streets from money out of its
own treasury, whether the money be raised by an *ad valorem*
tax or a commutation tax, is working the streets at the expense
of the municipality, within the meaning of sections 6 and 7 of
the act of 1900. Our view of this statute is that when the
legislature provided that the commutation tax should be ex-
pended in the district or incorporated village, town, or city from
which the same was collected, and that such commutation tax
for road purposes paid by the residents of a municipality should
be turned over to the treasury of the municipality and be ex-
pended by the proper authorities thereof on the streets of the
municipality, and then provided that the *ad valorem* tax should
be treated as a general fund for use anywhere in the county,
except, taxes collected on property within the municipality " the
streets of which are worked at the expense of the municipal
treasury," which should be equally divided between the county
road fund and the municipal street fund, the use of the words
" the streets of which are worked at the expense of the munic-
ipal treasury " were inserted for the purpose of showing the
reason why a distinction was made between a municipality and
other parts of the county. In other words, it is provided that
the *ad valorem* tax should be treated as a general fund for use
anywhere in the county, except the taxes collected on property
within the municipality, one-half of which is given to the mu-
nicipality and the other half to the general road fund. Why
this distinction? Because the streets are worked by the munici-

pality and are no burden to the county; and, this being the case, it was just that the municipality should have one-half of the amount raised by taxation of its property for road purposes, when it was keeping up its own roads without expense to the county, and also contributing to the maintenance of the county roads.

We do not think it was intended by the legislature that the phrase in question should be given so technical a construction as to defeat the municipality in the collection of this fund, unless it be shown that the expense of working the streets was actually paid out of money in the treasury collected by *ad valorem* taxation. The statute does not say that a municipality must bear the expense of working its own streets out of money paid into the treasury by the assessment of an *ad valorem* tax before it is entitled to claim one-half of the tax levied by the board of supervisors. The reason for the exception in behalf of a municipality is that it is maintaining its own streets without any burden to the county, a thing which no other part of the county does. This is the reason why only one-half the tax collected for road purposes is required to be paid to the county. The reason does not lie in the mere fact that the money is paid out of the municipal treasury to keep up the streets, but that they are kept up without burden to the county. This phrase need not have been in the act, and, being in the act, it is merely put there for the purpose of showing why a municipality is dealt with differently from other parts of the county, and allowed back part of the money raised by *ad valorem* taxes for general road purposes on property within its own limits. It was not intended to limit this right only to municipalities which actually paid out to the treasury money collected by *ad valorem* tax for street purposes only, but to all municipalities bearing the burden of their own streets.

*Reversed and remanded.*